IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,
  *ex rel*. J. Michael Hayes,

                            **REPORT AND**
                            **RECOMMENDATION**

               Plaintiffs,          12-CV-01015-WMS-JJM

v.

ALLSTATE INSURANCE COMPANY, et al.,

              Defendants.

_____

## INTRODUCTION

      "[I]n our legal system, words have consequences." <u>Joe Hand Promotions, Inc. v.</u>

<u>Talayarathe</u>, 2012 WL 1815622, *5 (N.D.Cal. 2012).When words are used recklessly, as they

have been in this case, those consequences can be serious.  For the following reasons, I

recommend that the Amended Complaint [21][1] be dismissed, with prejudice.

## BACKGROUND

      On October 23, 2012 attorney J. Michael Hayes (the "Relator")[2]  commenced this

*qui tam* action on behalf of the United States pursuant to the False Claims Act ("FCA"), 31

U.S.C. §§3729 *et seq.*, alleging that the named defendants engaged in a nationwide scheme to

---

    [1]       Bracketed references are to CM/ECF docket entries.

    [2]       "[A] private person (the relator) may bring a *qui tam* civil action for the person and for
the United States Government . . . . in the name of the Government." <u>Vermont Agency of Natural</u>
<u>Resources v. United States ex rel. Stevens</u>, 529 U.S. 765, 769 (2000).

deprive Medicare of payments to which it was entitled under the Medicare Secondary Payer Act, 42 U.S.C. §§1395y *et seq.* Amended Complaint [21].

The original Complaint [1], filed under seal, accused defendants of "fraudulent avoidance of remitting monies owed to Medicare" (<u>id.</u>, p. 46 [or 51 of 66], Point VI) and alleged, *inter alia*, that:

- "This Complaint details Relator Hayes's discovery and investigation of the Defendants' fraudulent schemes and is supported by documentary evidence" (<u>id.</u>, ¶214);

- "Relator Hayes has direct and independent knowledge of the information on which the allegations are based" (<u>id.</u>, ¶213);

- "The Defendants are insurance companies and self-insured trucking companies that cover liability for their own employees. Since 2003, whenever these defendants settled liability claims with Medicare beneficiary claimants, they knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse Medicare for the payments that the Medicare program had already made for these beneficiaries' for health care" (<u>id.</u>, ¶2);

- "Defendants, since 2003 to the present, have knowingly concealed or knowingly and improperly avoided or decreased their obligation to pay or transmit money or property to the government in violation of the False Claims Act" (<u>id.</u>, ¶220).

By Notice dated March 14, 2014 [15], the United States declined to intervene in the action, reserving its right to intervene "for good cause, at a later date".[3] On March 20, 2014, Judge Skretny ordered the Complaint to be unsealed and served upon the defendants [16]. On March 25, 2014 the firms of Gelber & O'Connell, LLC and Peter M. Jasen, PC were substituted as attorneys for the Relator [17].  On April 1, 2014, the Relator moved to discontinue the action against certain defendants, stating that "it appears that the stated Defendants may have been more compliant with the Medicare requirements than the remaining Defendants".  O'Connell Affidavit [18], ¶6. Judge Skretny granted that motion on April 14, 2014 [20].

On April 22, 2014 the Relator filed a verified Amended Complaint [21] alleging, *inter alia*, that:

- "This Complaint details Relator Hayes's discovery and investigation of the Defendants' fraudulent schemes and is supported by documentary evidence" (id., ¶415);

- "Relator Hayes has direct and independent knowledge of the information on which the allegations are based" (id., ¶414);

- "Since 2003, whenever these defendants settled liability claims with Medicare beneficiary claimants, they knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse Medicare for the payments that the Medicare program had already made for these beneficiaries' for health care" (id., ¶2);

---

[3]     The government's decision not to intervene does not influence my consideration of this action.  *See* United States ex rel. Feldman v. van Gorp, 2010 WL 2911606, *2 (S.D.N.Y. 2010) ("Because the government may have a host of reasons for not pursuing a claim, courts do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the *qui tam* relator's allegations of fraud to be without merit").

- "From 2003 to the present, Defendants have, in a nationwide scheme, knowingly concealed and/or knowingly and improperly avoided or decreased their obligation to pay or transmit money or property to the government by not reimbursing Medicare" (id., ¶420);

- "Relator . . . has personal knowledge that this scheme was . . . employed generally and throughout the industry nationally, by all the Defendants herein" (id., ¶¶29, 59, 74, 89, 104, 119, 140, 154, 176, 190, 224, 238, 255, 266, 277, 288, 299, 310, 335, 346, 357);

- "Defendants, since 2003 to the present, have knowingly concealed and/or knowingly and improperly avoided or decreased their obligation to pay and transmit money to the government in violation of the False Claims Act"(id., ¶421).

Upon reviewing the Amended Complaint, Susan C. Roney, attorney for the FedEx defendants,[4] noticed "that the only documentary support identified for all the claims against the FedEx Defendants was Exhibit S, an unexecuted form release between an unidentified claimant and [Federal Express Corporation] dated 2003".  Roney Declaration [86-4], ¶2; *see also* [21-19]. On April 23, 2014 Ms. Roney contacted one of the Relator's attorneys, Timothy O'Connell, "and asked whether he or Relator had any other support for the claims made against the FedEx Defendants. Mr. O'Connell said he was not aware of any, but would check with Relator and get back to me". Id., ¶3.

On April 28, 2014 Mr. O'Connell responded to Ms. Roney "that Relator did not have any additional supporting documents, specifically no evidence of any practices by any of the

---

[4]       "FedEx defendants" collectively refers to FedEx Corporation and its wholly owned subsidiaries Federal Express Corporation, FedEx Ground Package System Inc., FedEx Freight Corporation, FedEx Office and Print Services, Inc., FedEx Custom Critical, Inc., FedEx Trade Networks Inc., FedEx Supply Chain Systems, Inc. and FedEx Corporate Services, Inc. *See* Klank Declaration [86-2], ¶2; Roney Declaration [86-4], ¶1.

other FedEx Defendants or of Express' practices after 2003, but that Relator believed that he could proceed against all the FedEx Defendants based solely upon Exhibit S and the general allegations of the Amended Complaint relating to a 'scheme'." Id., ¶4.

By letter to the Relator's attorneys dated May 14, 2014 [86-5], Ms. Roney stated that "Mr. Hayes and you were required to conduct an inquiry into the validity of all the claims you have made against each of the named defendants. I understand from my conversations with Mr. O'Connell that you have no such basis against any of the FedEx Defendants. You attached and relied upon a single unexecuted release with one of the FedEx Defendants, Federal Express Corporation, dated 2003. You have no evidence of any practices by any of the remaining FedEx Defendants and none of the practices by Federal Express Corporation throughout the actionable time period of October 2006 through October 2012." Her letter enclosed a proposed motion for sanctions pursuant to Fed. R. Civ. P. ["Rule"] 11, and warned that the FedEx defendants would proceed with the motion unless the Relator agreed to dismiss them from this action.

Mr. O'Connell responded by letter dated May 30, 2014 [86-6], stating that "Mr. Hayes disagrees with your assessment and will contest a motion for Rule 11 Sanctions . . . . [This case] is not based upon information and belief but rather gives necessary detail and further alleges a general scheme of which a basis is provided for inclusion of your clients".

On July 3, 2014 the Relator filed a "Notice of Motion for Leave to Serve Discovery Demands" [85], and the FedEx defendants filed their motion for Rule 11 sanctions [86]. In seeking leave to conduct expedited discovery, the Relator admitted that it "very well may be that a few of the named defendants earlier opted out of the insurance business. One or more may be exclusively 'holding companies' that do not deal directly with liability claims and,

as such, have no actual exposure.  It is even possible that one or more of the Defendants actually

did reimburse Medicare during the years at issue . . . . Those who were not in the business or

repaid Medicare should likely be dismissed after the Government has had an opportunity to

consider their affirmations.  That is the purpose of this application." Relator's Memorandum of

Law for Expedited Discovery [85-3],  p. 5.

By Text Order dated July 8, 2014 [94], District Judge William M. Skretny

referred this action to me for supervision of pretrial proceedings.  On July 11, 2014 the Relator

moved for leave to file a Second Amended Complaint [107, 121-3] repeating the allegations of

the Amended Complaint, deleting one defendant, and adding 17 additional defendants.  In

support of the motion, he again stated that "[t]his claim concerns an alleged nationwide 'scheme'

involving the named defendants", and that "the scheme, of which Relator has direct and personal

knowledge, involves millions of unreimbursed Medicare recovery claims and thousands of

attorneys nationwide".  O'Connell Affirmation [121-2], ¶¶2, 6.

On July 15, 2014 I held a status conference with counsel [120].  I expressed

concern as to how the Relator's unequivocal allegations that all defendants were involved in the

alleged scheme could be reconciled with his admission (in his motion for discovery) that some

defendants may not have been involved (id., pp. 17-21).  On July 16, 2014 I issued an Order

[118] staying further proceedings pending consideration of whether sanctions were warranted. I

directed the Relator to "respond to the FedEx defendants' Rule 11 motion and . . . show cause

pursuant to Rule 11(c)(3) why the conduct described in this Order has not violated Rule 11(b)".[5]

_____

[5]      The Order listed the previously cited allegations of the Amended Complaint. [118], pp.
3-4.

On August 6, 2014, the Relator moved to withdraw his prior motion for leave to file a Second Amended Complaint [125].  In granting that motion the same day, I stated that "[b]oth motions may be considered in determining whether sanctions are warranted" [126].

On August 13, 2014 the Relator filed an Amended Memorandum of Law [134] and a Second Amended Attorney Affirmation by Messrs. O'Connell and Jasen [134-1], urging several reasons why sanctions are not warranted. Exhibit D to the Affirmation [134-5] is a revised proposed Second Amended Complaint.  The Relator asked that "if the Court . . . believes that Relator's Amended Complaint [EFC No. 21] is inartful, that the Court permit . . . the proposed revised Second Amended Complaint attached hereto as Exhibit 'D' [134-5] to be filed and served accordingly.  Same has been approved for filing by the United States Attorney's office as it does not differ substantively from the original Complaint [EFC No. 1]."  Relator's Amended Memorandum of Law [134], p. 25.

At the conclusion of oral argument on September 3, 2014 [142], I spoke to counsel off the record. I told them that I was prepared to issue a decision recommending that the Amended Complaint be dismissed with prejudice as a sanction, but stated that I would prefer not to do so, in order to avoid needless embarrassment.[6]  I suggested that the parties agree to discontinue the action with prejudice, but without fees or costs, and gave them until September 24, 2014 to advise me whether this proposal was acceptable.

I confirmed that suggestion in an e-mail the following day: "[U]nless the parties agree to settle as discussed yesterday, I will recommend dismissal with prejudice as to the

---

[6]       "Courts . . . may wish to consider the extrajudicial impact of sanctions and sanction proceedings on the reputation of attorneys." 5A Wright, Miller, Kane, Federal Practice $ Procedure (Civil) §1336.1 (3d ed. 2014).

Relator, but without prejudice to the government's right to commence a separate action.  If anyone feels that this makes settlement infeasible, please let me know as soon as possible, as there is no sense waiting until September 24 if anyone considers this to be a deal breaker". [149-2], p. 63 of 73.

On September 16, 2014 the Relator moved for leave to discontinue claims against four named defendants [146].  On September 17, 2014 Mr. O'Connell and his law firm moved, with the Relator's consent, to withdraw as co-counsel for the Relator [147].  I granted both motions by Text Order dated September 25, 2014 [152].

On September 19, 2014, the Relator filed a motion [149] seeking reargument or reconsideration of my stated intention to recommend dismissal of the Amended Complaint.  In addition to again arguing that sanctions were not warranted, the Relator accused me of "heavy handed conduct" which "is unbecoming and unprofessional" (Hayes Affidavit [149-1], ¶66).  He suggested that "[i]n view of the checkered and tortured course this case has taken in the mere two months it has been before Magistrate McCarthy, perhaps the Court should consider recusing itself on this, its admitted first *qui tam* action".  Id.

Further proceedings were held on September 24, 2014 [153].  After confirming with the Relator that the action would not be voluntarily discontinued (id., p. 7), I offered him the opportunity for further oral argument, to which he responded that "[u]nless the Court has any questions, comments . . . we would rely on the papers".  Id., p. 9.

## ANALYSIS

**A.      Is Recusal Appropriate?**

Before proceeding to the question of sanctions, I must first address the Relator's suggestion that I should recuse myself from this case.  It bears noting that the Relator did not make this suggestion until 16 days after I had told the parties that I would  recommend that this action be dismissed if the Relator did not agree to voluntarily discontinue it.  "In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case."  In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir.1988), cert. denied, 490 U.S. 1102 (1989); Ex parte American Steel Barrel Co., 230 U.S. 35, 44 (1913) (recusal is not "intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard").

28 U.S.C. §455(a) provides that a "magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned".  The standard for recusal is "whether an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal."  In re Basciano, 542 F.3d 950, 956 (2d Cir.2008), cert. denied, 555 U.S. 1177 (2009).  For the reasons which I discussed at length from the bench on September 24, 2014 ([153], pp. 9-16), I see no basis to question my impartiality, and therefore will not recuse myself.  "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."  Drexel, 861 F.2d at 1312.

**B.     Has the Relator Engaged in Sanctionable Conduct?**

"The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit.  A signature sends a message to the district court that this document is to be taken seriously . . . . [T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility to validate the truth and legal reasonableness of the papers filed."  Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 546, 547 (1991).

Like any plaintiff, the Relator "is the master of the complaint and has the option of naming . . . those parties [he] chooses to sue".  Lincoln Property Co. v. Roche, 546 U.S. 81, 91 (2005).  However, for purposes of Rule 11, "the fact that a claim is properly asserted against one defendant does not mean that the same claim may properly be asserted against a different defendant".  Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).  This principle "is especially true when fraudulent conduct is alleged."  Watkins v. Smith, 2013 WL 655085, *9 (S.D.N.Y. 2013), aff'd, 2014 WL 1282290 (2d Cir. 2014) (Summary Order).  "Accusations of fraud are serious ones to make and they should not be made lightly", Gmelin v. Permeator Corp., 1985 WL 29947, *4 (D.N.J. 1985), because they "may damage a defendant's reputation regardless of the cause of action in which they appear".  Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).

Rule 11(b)(3) states that "[b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and believe, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery". While the phrase "specifically so identified" refers to allegations "upon information and belief" (2 Moore's Federal Practice, §8.04[4] (Matthew Bender 3d ed. 2014)), the Relator admits that he "did not allege 'upon information and belief'". Relator's Amended Memorandum of Law [134], p. 23; letter dated May 30, 2014 [86-6] ("the *Hayes* matter is not based upon information and belief"). Instead, he made all of the allegations of the Amended Complaint upon personal knowledge - presumably in order to qualify as an "original source" under 31 U.S.C. §3730(e): "Relator Hayes is an original source as defined therein. Relator Hayes has direct and independent knowledge of the information on which the allegations are based". Amended Complaint [21], ¶414.

One of those allegations, repeated throughout the Amended Complaint, was that the Relator "has personal knowledge that this scheme [to defraud Medicare] was . . . employed generally and throughout the industry nationally, by *all* the Defendants herein". [21], ¶¶29, 59, 74, 89, 104, 119, 140, 154, 176, 190, 224, 238, 255, 266, 277, 288, 299, 310, 335, 346, 357 (emphasis added). By his own admission, "there is no wiggle room" in those allegations (July 15, 2014 proceedings [120], p. 19), because "[t]he word 'all' means what it states - 'all'." Hoffman v. Arcelormittal Pristine Resources, Inc. 2011 WL 1791709, *4 (W.D.Pa. 2011). It "thus is taken to mean all-inclusive or without exception". Interstate Equipment Co. v. ESCO Corp., 2014 WL 3547348, *11 (W.D.N.C. 2014).

However, the Relator's subsequent submissions demonstrate beyond question that he did *not* know whether *all* defendants had participated in the alleged scheme: "It very well may be that a few of the named defendants earlier opted out of the insurance business. One or more may be exclusively 'holding companies' that do not deal directly with liability claims and,

as such, have no actual exposure.  It is even possible that one or more of the Defendants actually did reimburse Medicare during the years at issue."  Relator's Memorandum of Law for Expedited Discovery [85-3], p. 5.

The Relator also alleged, both in the Complaint and Amended Complaint, that "[s]ince 2003, *whenever* these defendants settled liability claims with Medicare beneficiary claimants, they knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse Medicare". [1], ¶2; [21], ¶2 (emphasis added). "'Whenever' means . . . every time." Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 696 (N.D.Ga. 2012).  Yet once again, the Relator's subsequent submissions make clear that he did not know whether *every* settlement by defendants violated the FCA:  "It is . . . possible that one or more of the Defendants actually did reimburse Medicare during the years at issue."  Relator's Memorandum of Law for Expedited Discovery [85-3], p. 5.  "It is not reasonable to expect that Relator, as an outsider to Defendants generally, and FedEx specifically, would be able to gain access to the internal settlement documents and evidence to support Relator's claim which is in the exclusive control of the defendant, FedEx."  Relator's Amended Memorandum of Law [134], p. 17.

I recognize that "a district court can impose [Rule] 11(c)(3) sanctions on its own initiative only upon a finding of subjective bad faith."  Rankin v. City of Niagara Falls, 293 F.R.D. 375, 387 (W.D.N.Y. 2013), aff'd, 569 Fed.Appx. 25 (2d Cir. 2014) (Summary Order); Muhammad v. Walmart Stores East, L.P., 732 F.3d 104, 108 (2d Cir. 2013).  However, the Relator's claim of personal knowledge that all defendants defrauded Medicare, and that they did so whenever they settled claims involving Medicare beneficiaries, fits the definition of subjective

bad faith, because he knew that he had no such knowledge as to all defendants or all settlements. "Fraud includes the pretense of knowledge when knowledge there is none." Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 179 (1931); DiRose v. PK Management Corp., 691 F.2d 628, 632 (2d Cir.1982), cert. denied, 461 U.S. 915, 103 (1983). *See also* Johnson ex rel. United States v. The University of Rochester Medical Center, 715 F.Supp.2d 427, 430-31 (W.D.N.Y. 2010), aff'd, 642 F.3d 121 (2d Cir. 2011) ("bad faith [is] inherent in counsel's attempt to place facts in a pleading which she knew firsthand to be misleading at best and utterly untrue at worst"); Rankin, 293 F.R.D. at 390, 393 (counsel "did not know whether there was a legally sufficient basis to oppose the motion for summary judgment when she swore that she believed there was . . . . The press of other matters on [her] calendar does not negate the subjective bad faith of her misconduct"); id., 569 Fed.Appx. at 27 ("we cannot conclude that the district court clearly erred in determining that these statements were misleading and made in subjective bad faith").

   In suggesting that his conduct was not sanctionable, the Relator advances several arguments, none of which I find persuasive. For example, he claims that at the time of filing of the Amended Complaint, "the state of the law relative to pleading qui tam matters had yet to be settled . . . by the 2d Circuit, was in a state of flux . . . . relat[ing] to the specificity of pleading of FCA cases and as to the level of specificity required of the allegations". Relator's Amended Memorandum of Law [134], p. 9. Not only would that argument furnish no excuse for the misrepresentations at issue, but it is simply not true in any event. *See* Gold v. Morrison  Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995), cert. denied, 517 U.S. 1213 (1996) ("claims brought under the FCA fall within the express scope of Rule 9(b). Not surprisingly, then courts routinely

require FCA claims to comply with Rule 9(b)"); United States ex rel. Osmose, Inc. v. Chemical Specialties, Inc., ___F. Supp.2d___, 2014 WL 234819, *4 (W.D.N.Y. 2014) ("a claim made under the False Claims Act is subject to the heightened pleading standard of Rule 9(b)").

The Relator next argues that "time was running on the substantial task of the need to Amend the Complaint".  Relator's Amended Memorandum of Law [134], p. 17.  However, he subsequently admitted that the deadline to file the Amended Complaint "was self-imposed". September 3, 2014 proceedings [142], p. 17.  Therefore, that excuse is unavailing.  See Ortho Pharmaceutical Corp. v. Sona Distributors, 847 F.2d 1512, 1518 (11th Cir. 1988) (the "time constraints of which counsel complains were of its own making.  Counsel moved for no extension of time to investigate further").

He further argues that "where discovery is the only way to investigate the facts in the exclusive control of the Defendants, and where rules prevent discovery of the same without filing suit, no sanctionable conduct occurred".  Relator's Amended Memorandum of Law [134], p. 18.  However, this argument contradicts his assertion that he had "personal" and "independent" knowledge of the facts at issue.  See Amended Complaint [21], ¶¶335, 414.  "A litigant may not play fast and loose with the courts by freely taking inconsistent positions in a lawsuit and simply ignoring the effect of a prior filed document."  Reinschmidt v. Exigence LLC (Del.), 2014 WL 2047700, *3 (W.D.N.Y. 2014).  See also United States ex rel. Joshi v. St. Luke's Hospital, Inc., 441 F.3d 552, 560 (8th Cir.), cert. denied, 549 U.S. 881 (2006) ("Dr. Joshi contends a relaxed pleading standard is appropriate in cases such as this where . . . information concerning the alleged fraud is uniquely within the defendants' control . . . . Dr. Joshi's argument

conflicts with his allegation he is an 'original source' of St. Luke's and Dr. Bashiti's alleged fraudulent conduct").

Finally, the Relator suggests that "[t]o impose any sanction in this complex litigation would most certainly run contrary to the intended purpose of qui tam litigation and place a significant 'chill' over attempts to protect the public fisc".  Relator's Amended Memorandum of Law [134], p. 5.  Followed to its logical conclusion, this argument would effectively exempt *qui tam* Relators from the requirements of Rule 11.  There is no such exemption. "[A] person filing a *qui tam* complaint, like any other civil complainant, must have an adequate basis under Rule 11 . . . for his fraud allegations, and he must plead those allegations with the particularity required by Rule 9(b)." United States ex rel. Detrick v. Daniel F. Young, Inc., 909 F.Supp. 1010, 1018 (E.D.Va. 1995).  *See also* Johnson, 715 F.Supp.2d at 429 (applying Rule 11 sanctions in a *qui tam* action).

I recognize that "factual determinations under Fed.R.Civ.P. 11(c)(3) must meet the high evidentiary burden of clear and convincing evidence".  Rankin, 293 F.R.D. at 387.  However, since the Relator's own words demonstrate his bad faith, that burden has been satisfied in this case.[7]

---

[7]     Moreover, since the Relator's subjective bad faith has been demonstrated, the lesser standard of "objective unreasonableness" applicable to the motion by the FedEx defendants has also been satisfied. *See* Muhammad, 732 F.3d at 108  ("For sanctions issued pursuant to a motion by opposing counsel, courts have long held that an attorney could be sanctioned for conduct that was objectively unreasonable").

**C.      Should the Relator be Allowed to Replead?**

          As stated previously, the Relator has asked that "if the Court . . . believes that

Relator's Amended Complaint . . . is inartful, that the Court permit . . . the proposed revised

Second Amended Complaint [134-5] to be filed and served accordingly".  Relator's Amended

Memorandum of Law [134], p. 25.

          "Although leave to amend pleadings should be freely given when justice requires,

the trial judge's discretion is broad and its sound exercise usually depends on the presence or

absence of such factors as 'undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Browning

Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir. 1977) (*quoting*

Foman v. Davis, 371 U.S. 178, 182 (1962)). Therefore, "motions to amend should generally be

denied in instances of futility [or] bad faith".  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d

122, 126 (2d Cir. 2008).  Both factors are present here:


          **1.      Futility**

          The Relator admittedly had no basis for claiming to have personal knowledge that

all defendants had participated in the alleged scheme to defraud Medicare.  Recognizing that

"the original use of the word 'all' in the Amended Complaint . . . is inaccurate" and constitutes a

"possible over reach" (Hayes Affidavit [149-1], ¶¶19, 29), the Relator now seeks leave to file a

revised Second Amended Complaint [134-5] in which he deletes the word "all" from most

paragraphs,[8] and alleges instead that he has "personal knowledge that this scheme was . . . employed generally and throughout the industry nationally, by . . . the Defendants herein". Id., ¶30.  *See also* id., ¶¶131, 196, 215, 249, 265, 281, 292, 304, 315.  Elsewhere, he alleges that "'[s]ince 2003 and extending to the present, Defendants have knowingly concealed and/or knowingly and improperly avoided or decreased their obligation to pay or transmit money or property to the government in violation of the False Claims Act".  Id., ¶453; *see also* ¶¶455, 456, containing similar allegations as to "defendants".

The Relator's reference to "defendants", rather than "all defendants", does not satisfy the requirements of Rule 9(b).  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir.1987).  Thus, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged [fraud] . . . to 'defendants'".  Fisher v. APP Pharmaceuticals, LLC, 783 F.Supp.2d 424, 433 (S.D.N.Y. 2011).  *See also* Watkins, 2013 WL 665085, *9 (plaintiff may not utilize "a generalized term like 'defendants' to obfuscate each defendant's role in the alleged conduct"); In re LIBOR-Based Financial Instruments Antitrust Litgation, ___ F. Supp.2d___, 2014 WL 2815645, *7 (S.D.N.Y. 2014) ("'lumping' all defendants together fails to satisfy the particularity requirement").

Since the Realtor's proposed Second Amended Complaint does not satisfy the requirements of Rule 9(b), leave to amend can be denied for that reason alone.  *See* Advanced

---

[8]         However, he did not remove the word from all paragraphs. *See*, *e.g.*, [134-5], ¶419 ("In all instances, they knowingly and improperly avoided their obligation to repay Medicare its medical expenditures").

Micro Devices, Inc. v. Samsung Electronics Co., Ltd., 2009 WL 1396256, *2 (N.D.Cal. 2009)

("The court can deny the motion to amend on the basis of futility . . . if plaintiff fails to plead

with requisite specificity under Rule 9(b)"); De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65,

72 (2d Cir.), cert. denied, 519 U.S. 1007 (1996) ("leave to replead [is] not required when [the]

proposed amendment would not cure [the] complaint's deficiency").


    **2.**    **Bad Faith**

        In addition to futility, leave to amend may also be denied due to the Relator's

previously discussed bad faith (see pp. 11-13, supra).  He should not now be allowed to simply

walk away from his earlier misrepresentations.  "In the litigation process, when certain moments

have passed, district courts are not required to give parties a 'do over'."  Harleysville Lake States

Insurance Co. v. Granite Ridge Builders, Inc., 2009 WL 4843558, *2 (N.D.Ind. 2009).

        That conclusion is reinforced by the fact that one of those misrepresentations

appears yet again in the proposed Second Amended Complaint:  "Since 2003, whenever these

defendants settled liability claims with Medicare beneficiary claimants, they knowingly avoided

and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully

reimburse Medicare".  [134-5], ¶2 (emphasis added).  As already discussed (p. 12, supra), the

Relator knows that he has no basis to make that allegation at this point - yet he continues to do

so.

        Given the futility of the proposed Second Amended Complaint, coupled with the

Realtor's bad faith, his request for leave to amend should be denied.

**D.      What is an Appropriate Sanction?**

"District courts are given broad discretion in tailoring appropriate and reasonable

sanctions", and may "fashion novel and unique sanctions to fit the particular case".  S.E.C. v.

Smith, 710 F.3d 87, 98 (2d Cir. 2013). Among the factors which may be considered in

determining an appropriate sanction are "[w]hether the improper conduct was willful, or

negligent; whether it was part of a pattern of activity, or an isolated event . . . [and] whether the

responsible person is trained in the law".  Rule 11, 1993 Advisory Committee Notes.

Consideration of these factors warrants the imposition of a harsh sanction in this

case.  The Relator has been a practicing attorney for 35 years.  Amended Complaint [21], ¶11.

Although he swore to the truth of the allegations of the Amended Complaint ([21], p. 122 (128 of

130)) and the proposed Second Amended Complaint ([134-5], p. 142 (151 of 187)), he knew that

not all of those allegations were necessarily true, since he did not know whether "all" defendants

were involved in the alleged scheme, nor did he know that they violated the FCA "whenever"

they settled a claim involving a Medicare beneficiary.  "Our entire justice system is premised on

the dependability and truthfulness of documents which are signed by members of the bar."  In re

Baycol Products Litigation, 2004 WL 1052968. *11 (D.Minn. 2004).  "[A]ttorneys, as officers of

the court, owe an unflagging duty of candor to the tribunal. When these foundational duties are

breached, the integrity of the judicial process is undermined."  United States v. Daugerdas, 867 F.

Supp.2d 445, 448 (S.D.N.Y. 2012).

Moreover, the Relator made these misrepresentations intentionally: "The

intentional general structure of this qui tam action brought to recover funds that are owed the

Government was to sue the 'parent and its subsidiaries' in order to recover as much of the funds

as possible". Relator's Amended Memorandum of Law [134], p. 19. However, "there is a presumption of separateness [to corporations] which is entitled to substantial weight". American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir.), cert. denied, 488 U.S. 852 (1988). For example, each of the FedEx defendants "has its own independent operations" and its "own respective board of directors and officers". Klank Declaration [86-2], ¶2.

As the Relator now admits, he did not know whether all parent and subsidiary corporations were involved, since "present day corporate structures, involvements [and] subsidiaries are an extremely complex and constantly changing universe" (Hayes Affidavit [149-1], ¶13), and "until some discovery has been undertaken, it is extremely difficult to . . . identify which of the multitude of corporate Defendant(s), including the FedEx Defendants, were involved in the alleged scheme. This is especially so where there exists multiple corporate entities/companies coupled with the difficulty of identifying their business practices without some level of discovery." Relator's Amended Memorandum of Law [134], p. 18.[9]

"A relator's contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage." Wood ex rel. United States v. Applied Research Associates, Inc. 328 Fed.Appx. 744, 747, 2009 WL 2143829, *2 (2d Cir. 2009), cert. denied, 559 U.S. 929 (2010) (Amended Summary Order). Accordingly, "it is well settled that a plaintiff may not use discovery to obtain facts he presently does not have in order to plead fraud with specificity". Terra Resources I v. Burgin, 1986 WL 4064, *6 (S.D.N.Y.

---

[9]        However, this difficulty did not stop the Relator from repeatedly alleging - again on direct knowledge, not upon information and belief - that "the past, present and continuing relations and dealings by and between these related entities are so inextricably intertwined that for purposes of this suit, all of them can and should be considered as a single entity at law and equity". See Amended Complaint [21], ¶¶19, 49, 64, 79, 94, 109, 129, 145, 167, 181, 215, 229, 246, 326.

1986).  "It is thus no answer to a motion seeking Rule 11 sanctions for asserting a baseless claim of fraud to suggest that plaintiffs needed discovery to ascertain whether the claim asserted was well founded."  <u>City of Yonkers v. Otis Elevator Co.</u>, 106 F.R.D. 524, 525 (S.D.N.Y. 1985).

Notwithstanding the clear-cut prohibition against obtaining discovery absent a factually adequate pleading of fraud, the Relator has repeatedly insisted upon playing by his own rules, naming defendants as to whom he knew he lacked an adequate factual basis, with a view toward dismissing them from the case if *they* could prove to *him* that they were not involved in the alleged fraud.  *See* Relator's Memorandum of Law for Expedited Discovery [85-3],  p. 5 ("Those who were not in the business or repaid Medicare should likely be dismissed after the Government has had an opportunity to consider their affirmations.  That is the purpose of this application").  However, "[l]itigation is not a game played by the rules of one of the parties".  <u>Mkhitaryan v. U.S. Bancorp</u>, 2013 WL 4046254, *12 (D.Nev. 2013).

The Relator apparently finds it hard to believe that his deliberate misuse of language might be sanctionable.  "Is that what this is about? Relator used the word 'all' and that negates all other evidence/proof and allegations in the Complaint? . . . . So, because of use of a single word, the Court is quite 'troubled' and the entire complaint should be dismissed with prejudice to Relator . . . ?" Hayes Affidavit [149-1], ¶¶31,41. However, "[w]ords have meanings, and lawyers should choose them carefully in stating the causes of actions set forth in a complaint or amended complaint".  <u>Scroggins v. McGee</u>, 2011 WL 4018049, *4 (E.D.Ark. 2011).  The Relator's use of the word "all" enabled him to sue not only those defendants for whom he had an adequate factual basis, but also those for whom he did not.

The Relator accuses me of "suggest[ing] that the Complaint is vague and not specific enough to support causes of action against any of the defendants".  Relator's Memorandum of Law [149-3], p. 1.  However, my concern is with whether the Relator alleged, not with what he could have alleged.  While the Relator might properly have drafted a narrower complaint naming only those defendants for whom he had a proper factual basis, he did not do so.  Instead, in the Complaint [1], the Amended Complaint [21], the proposed Second Amended Complaint [121-3], and the revised proposed Second Amended Complaint [134-5], he repeatedly and deliberately chose to overreach.  To expect me now to relieve him of the consequences of that choice is asking too much.  *See* <u>Pinto v. Universidad De Puerto Rico</u>, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her.  It is enough to view the basic complaint"); <u>Joe Hand Promotions</u>, 2012 WL 1815622, *5 ("Riley signed the documents in this case, and in doing so he certified their contents.  Now he must stand by his words").

Rule 11(c)(4) states that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated".  While I have considered the possibility of lesser sanctions (such as an award of attorney's fees to the FedEx defendants or a fine to be paid into court), in view of the deliberate and repeated false allegations made by the Relator in this case I do not believe that such a sanction would be an adequate deterrent - not only to the Relator, but also to others who might be inclined to make similar misrepresentations.  "[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan

Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Therefore, I recommend that the Amended Complaint be dismissed with prejudice

as to the Relator. *See* Shangold v. Walt Disney Co., 2008 WL 1908908, *1 (2d Cir. 2008)

(Summary Order) ("While dismissal is a harsh sanction, it is appropriate if there is a showing of

willfulness, bad faith, or fault on the part of the sanctioned party . . . . Shangold's and

Niederman's repeated false statements show their willfulness and bad faith"); Miller v.

Bridgeport Board of Education, 2014 WL 3738057, *10 (D.Conn. 2014) ("I conclude that

dismissal is by far the most appropriate remedy and that requiring Attorney Miller to pay only a

monetary sanction would ineffectively serve the deterrent purpose of Rule 11 sanctions in this

context"); Cochran v. Gilo, 2010 WL 716536, *1 (N.D.Fla. 2010) ("A Court may impose

sanctions upon a party who knowingly files a pleading containing false allegations, which

includes dismissal"); Last Atlantis Capital LLC v. AGS Specialist Partners, 533 F.Supp.2d 828,

834 (N.D.Ill. 2008) ("dismissal [is] appropriate when the plaintiff continually fails to provide a

valid pleading in compliance with the federal rules").

Having known and respected the Relator and his current and former attorneys

(Messrs. Jasen and O'Connell) for many years, I do not make this recommendation lightly.  I

believe that they acted perhaps out of excessive zeal, rather than actual malice.  Nevertheless,

misrepresentations of the type made in this case simply cannot be tolerated, and must be

meaningfully addressed.  Given the circumstances of this case, I believe that dismissal with prejudice as to the Relator is the only appropriate response.[10]

This recommendation is without prejudice to the government's right to commence a separate action for the same relief.  Rule 11(c)(1) authorizes sanctions only against "any attorney, law firm, or party that violated the rule or is responsible for the violation".  The government is obviously not an attorney or law firm - nor is it a party.  "Although the United States is aware of and minimally involved in every FCA action, we hold that it is not a 'party' . . . unless it has exercised its right to intervene in the case". United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 931 (2009). "To hold otherwise would render the intervention provisions of the FCA superfluous, as there would be no reason for the United States to intervene in an action in which it is already a party". Id. at 933.

Since the government is not a party to this action, it is not subject to sanctions under Rule 11(c). "The text of a rule . . . limits judicial inventiveness." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

---

[10]    Although the FedEx defendants had requested an award of attorney's fees for themselves and all defendants (FedEx defendants' Memorandum of Law [86-1], pp. 17-18), I believe that dismissal with prejudice as to the Relator adequately accomplishes the purposes of Rule 11, which "is not a fee-shifting statute".  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 409 (1990).  "The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 553 (1991).

**CONCLUSION**

For these reasons, I recommend that the Amended Complaint be dismissed with prejudice as to the Relator, but without prejudice to the government's ability to commence a separate action on its own behalf (subject to any applicable defenses), and that the FedEx defendants' motion for sanctions [86] be granted in part and denied in part.  Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by November 3, 2014 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:   October 16, 2014


/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge